UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————————————
|
|
MARYANNE GUTIERREZ,                                    |        Case No. 1:07-cv-1268
|
Plaintiff,                                     |        HONORABLE PAUL MALONEY
|
v.                                        |
|
78th JUDICIAL DISTRICT COURT and                       |
OCEANA COUNTY,                                         |
|
Defendants.                                 |
|
———————————————————————

## OPINION AND ORDER

**Granting the Defendants' FRCP 12(b)(6) Motion to Dismiss the FMLA Claims;
Declining Supplemental Jurisdiction over the State-Law Claims;
Terminating and Closing the Case**

Maryanne Gutierrez ("Gutierrez") brings this action under the Family and Medical Leave

Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), with a pendent Michigan common-law claim for wrongful

discharge in violation of public policy.[1]  It is undisputed that defendant 78th Judicial District Court

———————————————————
[1]

A preliminary statement in the amended complaint refers in passing to Michigan's Elliott-Larsen Civil Rights Act ("MELCRA"), but the body of the complaint asserts no MELCRA claim.

The plaintiff is reminded that while she had the right to amend the complaint once as of right before the defendants filed an answer, *Aslani v. Sparrow Health Sys.*, 2009 WL 736654, *2 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) (citations omitted), the filing of the answer cut off her right to amend without first obtaining the consent of opposing counsel or leave of court.

"Although Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave [to amend a complaint] when justice so requires,' the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place*, 589 F.3d 545, 551 (6th Cir. 2008) (Griffin, J.)

was Gutierrez's employer, but the parties disagree over whether defendant Oceana County, Michigan also should be treated as Gutierrez's employer for purposes of the FMLA.

The defendants jointly filed a motion to dismiss in part and for summary judgment in part. Under FED. R. CIV. P. 12(b)(6), they seek to dismiss the complaint as to Oceana County on the ground that only the 78th District Court "and not Oceana County is the proper employer of [the plaintiff], and the County took no action to interfere with Ms. Gutierrez'[s] right to obtain leave under FMLA."  Defendants' Motion to Dismiss and for Summary Judgment ("MTD") at 1 ¶ 1; *see also* MTD at 7-8 and Plaintiff's Brief in Opposition to the Motion to Dismiss and for Summary Judgment ("P's Opp") at 3-8.

Under FED. R. CIV. P. 56, the defendants seek summary judgment on the FMLA claims on two grounds.  *See* Mot. at 2 ¶¶ 3-4.  First, the defendants contend that there is no genuine issue of material fact that Gutierrez did not provide her employer with adequate proof that she suffered from a "serious medical condition", *see* MTD at 13-15 and P's Opp at 15-17.  Second, the defendants contend that there is no genuine issue of material fact that Gutierrez "failed to provide proper or sufficient notice that would have alerted her employer to the possibility that she was claiming or entitled to FMLA leave", *see* MTD at 8-13 and P's Opp at 9-15.

Finally, the defendants contend that Gutierrez's damage claims against them are barred by Eleventh Amendment immunity.  *See* Defendants' Reply Brief filed May 26, 2009 in Support of

---

(citing, *inter alia, Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991)).  *See, e.g., Williams v. Detroit Bd. of Ed.*, 306 F. App'x 943, 949 (6th Cir. 2009) (upholding denial of leave to amend and citing, *inter alia, Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (upholding denial of leave to amend where movant "delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed", without justification for the delay)).

Motion to Dismiss or for Summary Judgment ("Defs' Reply") at 2-4.  They waived this argument,

however, by failing to raise it in their opening brief supporting the motion.[2]

_____

[2]

"Ordinarily, this court will not consider arguments raised for the first time in a reply brief or surreply brief." *Appalachian Railcar Services v. Boatright Enterprises, Inc.*, 602 F. Supp.2d 829, –, 2008 WL 828112, *37 n.24 (W.D. Mich. 2008) (Maloney, J.) (citing, *inter alia*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e have found issues to be waived when they are raised for the first time in . . . replies to responses")). *See, e.g., State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, – F. Supp.2d –, 2009 WL 702863, *23 (W.D. Mich. Mar. 16, 2009) (Maloney, C.J.) ("Because Liberty did not make this argument in the opening brief supporting its motion for summary judgment, nor in its brief opposing State Farm's motion for summary judgment, the court need not consider it.").

Part of the reason for this rule is that raising a new defense, argument, or evidence in a reply brief affords the other side no opportunity to respond.  *ABC Beverage Corp. & Subsidiaries v. US*, 577 F. Supp.2d 935, 950 n.16 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, *NLRB v. Int'l Health Care, Inc.*, 898 F.2d 501, 506 n.5 (6th Cir. 1990)).  The opposing party should not have to incur the cost and effort of additional filings – a motion for leave to file a sur-reply, and the sur-reply itself – because the movants deliberately, or more likely inadvertently, held back part of their case.  Nor should the court have to schedule oral argument when it would not otherwise have done so, merely to afford the opposing party a fuller opportunity to address the belated argument.

A belated assertion of Eleventh Amendment immunity is subject to this waiver rule:

In stark contrast to th[e] concept of subject matter jurisdiction, "the Eleventh Amendment grants the State the legal power to assert a sovereign immunity defense should it choose to do so.  The State can waive the defense.  Nor need a court raise the defect on its own.  Unless the State raises the matter, a court can ignore it."

*Ku v. Tennessee*, 322 F.3d 431, 433 (6th Cir. 2003) (quoting *Wis. DOC v. Schacht*, 524 U.S. 381, 388-89 (1998)).  *Accord Schroeder v. San Diego Unified Sch. Dist.*, 2009 WL 1357414, *6 (S.D. Cal. May 13, 2009) ("Eleventh Amendment immunity is more appropriately considered an affirmative defense, not a jurisdictional bar . . . .") (citing, *inter alia*, *Douglas v. Calif. Dep't of Youth*, 271 F.3d 812, 821 (9th Cir. 2001)).  *See, e.g., In re Jereau*, No. 97-55872, 189 F.3d 473, 1999 WL 591504, *1 (9th Cir. Aug. 5, 1999) ("[T]he Board waived any Eleventh Amendment sovereign immunity defense it may have had  when it . . . *only raised its possible sovereign immunity defense in this court in its reply brief.*") (emphasis added) (citing *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 758 (9th Cir. 1999) ("The Eleventh Amendment was never intended to allow a state to appear in federal court and actively litigate . . . the merits, and only later belatedly assert its immunity . . . .")).

**BACKGROUND**

Gutierrez alleges that throughout her employment with the County, her immediate supervisor, Benton Gabbard ("Gabbard"), sexually harassed her. *See* First Amended Complaint filed Sept. 2008 ("Am Comp") ¶¶ 8-9.  When Gutierrez tried to file numerous harassment claims with the County Administrator, non-party Paul Inglis, he "ignored" her complaints and told her to raise the issue directly with Gabbard.  Am Comp ¶ 10.  Gabbard allegedly confronted Gutierrez about her complaints, berating her, directing her not to contact anyone at the court except him, and threatening to fire her through any means necessary.  Am Comp ¶ 11.  Due to the sexual harassment and Gabbard's subsequent threats, Gutierrez alleges, she "fell into a deep depression and anxiety requiring medical care."  Am Comp ¶ 12.

Gutierrez claims that "on several occasions" she tried to request FMLA leave from Gabbard and Inglis, and her doctor's staff also asked unspecified County employees for FMLA forms.  In each case, she alleges, Gabbard or Inglis responded that the County had no procedures in place for FMLA requests but that a doctor's note listing the dates that she would be absent would suffice.  Am Comp ¶¶ 13-14 & 16-17.  On an unspecified date, Gutierrez provided the requested doctor's note, with a list of the dates she would miss work, but Inglis sent a letter asking her to "submit a FMLA leave request form with a medical certification 'no later than Monday, December 19, 2005 at 5:00 p.m.'"  Am Comp ¶¶ 15 & 18 and Ex 1.  County Administrator Inglis's letter to Gutierrez, dated Wednesday, December 14, 2005, states as follows, in its entirety:

Re:    Request for Leave under the Family and Medical Leave Act

Dear Ms. Gutierrez:

I have given a great deal of thought to your situation with respect to your leave of absence from your position as District Court clerk with the 78th District Court.  Your

employer and I are somewhat confused and quite concerned over the rationale for your leave of absence from work since November 30, 2005.  To date, our office has received several statements from your physician's office which reflect the following in chronological order:

1.      Date: 11/30/2005 – return to work on 12/05/2005 as you were under a physician's [sic, this first slip was not signed by a physician] care from 11/30/05 - 12/04/05

2.      Date: 12/05/2005 – return to work on 12/07/2005 as you were under a physician's care [sic, this second slip was not signed by a physician] from 12/05/05 - 12/06/05

3.      Date: 12/07/2005 – must return to work on Monday, 12/12/2005 as you were under a physician's care from 12/05/05 - 12/09/05 [sic, not correct because this third slip was not signed by a physician]

4.      Date: 12/09/2005 – please excuse Maryanne for missing work 12/12/05 - 12/16/05

The confusion has arisen over whether you have been on sick leave or whether you have taken leave under the Family and Medical Leave Act (FMLA).  Under both types of leave, specific requirements must be met.

The following language is an excerpt from the County of Oceana's Personnel Policy as it relates to FMLA: Eligible employees may take leave for the following reasons: (1) to care for a child upon birth or upon placement for adoption or foster care; (2) to care for a parent, spouse or child with a serious health condition; or (3) when an employee is unable to work because of the employee's own serious health condition.

According to FMLA, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves: (1) inpatient care (i.e., an overnight stay), including any period of incapacity or any subsequent treatment in connection with the inpatient care; or (2) "continuing treatment" by a health care provider.

Past practice has not been for the County Administrator, County Board of Commissioners or the Department Head to grant leave under FMLA.  Rather, our office only required that the physician documented that the employee was off work. This is really not adequate under FMLA or the County's Personnel Policy.

With respect to sick leave, page 8 of the County's Personnel policy states that "leave over three (3) days must be certified by a doctor's certificate if requested by the

Department Head or Board of Commissioners".

I am concerned that you may be considered to be on an unapproved or unauthorized leave of absence by your Department Head and, unless you do one of the following, your actions to date may be construed as job abandonment or a voluntary quit.

*If the physician certifies that you should be on medical leave under FMLA, you will need to complete the enclosed "Employee Request for FMLA leave" and return it to this office no later than* **Monday, December 19, 2005 at 5:00 p.m.**

If the physician determines that your medical condition precludes you from going to and doing your work in the 78th District Court, you will need to have him/her submit a Certificate of your need to be on sick leave and the certificate of sick leave must include the following information: patient diagnosis, patient prognosis, type and length of treatment to be provided and anticipated date of return to work.  To date, the physician's certificates received by this office do not provide the necessary information.  The physician's certificate is to be submitted to this office no later than **Monday, December 19, 2005 at 5:00 p.m.**

You should be aware that your present employer needs to know the status of your medical condition and the reason(s) for your inability to work as he needs to assess his staffing needs during your absence.

*Please comply with this request immediately in order to properly assess the status of your availability for work.*

If you have any questions, please feel free to contact me.

MTD, Ex 4 (boldface in original, italics added).

On Friday, December 16, 2005, Court Administrator / Magistrate Benton C. Gabbard sent

a letter to County Clerk Griffin stating, in its entirety:

Re:     Leave, Maryanne Gutierrez

Mrs. Gutierrez filed a three (3) day doctor[']s excusal for sick time covering the 1st, 2nd and 5th of December with the County Administrator['] Office.  In the absence of any contact from Mrs. Gutierrez, she is considered in **serious** non-compliance of [sic] County policy.  This office is unable her job status.  Mrs. Gutierrez is considered to be on unexcused absence effective December 6th, 2005 and until clarification of Mrs. Gutierrez's status, she will not receive pay until further notice by this court.

Am Comp, Ex 2.  On Saturday, December 17, 2005, Gutierrez met with her doctor  "and *they determined that there was insufficient time to complete the required form and certification by December 19, 2005* as requested by Inglis."  Am Comp ¶ 21 (emphasis added).  Seeking to cast doubt on the veracity of this explanation for failing a medical certification of any sort by the deadline stated, the defendants note that the certification form belatedly provided by Gutierrez's physician after her termination contained only about twenty scribbled and sometimes barely-legible words and "N/A" symbols, which they imply could not have taken much time at all.

On Tuesday, December 20, 2005, having received nothing from Gutierrez and nothing further from her doctor's office, Court Administrator / Magistrate Gabbard wrote her the following letter:

> Re:      Employment Status
>
> Ms. Gutierrez:
>
> You have been absent from work since November 30, 2005 [a period of 21 days inclusive].  During this period of absence, this Court has not received any contact from you nor has it received any evidence of your inability to work due to a serious health condition.
>
> In light of your failure to contact this office regarding your absences and your failure to provide certification of the need for Family Medical Leave under the provisions of FMLA, this Court has come to the conclusion that effective today you have abandoned your job and effectively voluntarily resigned your position with this Court.
>
> If you have questions about final pay and continuation of benefits, please contact the Oceana County Administrator[']s Office, PO Box 31, Hart, Michigan, phone 3(231) 873-4835.

MTD Ex 1.

On Thursday, December 22, Gutierrez submitted a note signed by her doctor which stated only, "Please excuse Maryanne for missing work December 17 - Jan 2," with no further explanation

or documentation.  The next day, Friday, December 23, Gutierrez received from a letter from

supervisor Gabbard stating that she had abandoned her job and was terminated.  Am Comp ¶¶ 22-23.

After the termination, supervisor Gabbard and County Administrator Inglis allegedly refused to

answer or return her phone calls regarding the requested leave and the termination.  Am Comp ¶ 24.


**PROCEDURAL HISTORY**

Gutierrez filed the original complaint in December 2007[3] and the first amended complaint

in January 2008, and the County filed an answer in February 2008.  *See* Doc. Nos. 1, 3 and 7.[4]  The

parties participated in facilitative mediation in June 2008 but failed to reach a settlement.  *See* Doc.

---

[3]

"Generally, an FMLA claim must be brought 'not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought,'" *Maher v. Int'l Paper Co.*, 600 F. Supp.2d 940, ___ (W.D. Mich. 2009) (Maloney, C.J.) (quoting 29 U.S.C. § 2617(c)(1)), but the period is three years for a willful violation, *see id.* (quoting  29 U.S.C. § 2617(c)(2)).  *See, e.g., Maher*, 600 F. Supp.2d 940 (genuine issue of material fact existed as to whether employer's alleged FMLA violation was willful, so court refused to dismiss claim as untimely under period governing non-willful violations; *Hoffman v. Professional Med Team*, 270 F. Supp.2d 954 (W.D. Mich. 2003) (Quist, J.) (employer did not willfully violate FMLA rights), *aff'd*, 394 F.3d 414, (6th Cir. 2005).  Gutierrez alleges that the violation was willful, *see* Comp ¶ 34, but the court need not decide the issue.  The defendants have not contended that Gutierrez's claims are untimely under either standard.

[4]

On the FMLA claim, Gutierrez seeks compensation for past and future income and benefits, compensation for damage to her professional standing and reputation, "non-economic damages resulting from Plaintiff's humiliation, mental anguish and anxiety and emotional distress", punitive damages, attorney fees, costs and interest.  *See* Comp ¶ 33 and Prayer for Relief following ¶ 34.

Plaintiff is advised that compensatory damages for emotional distress are not available under FMLA, *see Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1007-08 (6th Cir. 2005) (collecting published decisions from five other circuit courts), nor are punitive damages of any sort, *see Cox v. TrueNorth Energy, LLC*, 524 F. Supp.2d 927, 948 (N.D. Ohio 2007) (Polster, J.) (citing *Rosania v. Taco Bell of America, Inc.*, 303 F. Supp.2d 878, 882 (N.D. Ohio 2004)) and *Reynolds v. Georgia-Pacific Corp.*, 2006 WL 212069, *8 (S.D. Ohio Jan. 25, 2006) (Dlott, J.).

Nos. 12-14.  In December 2008, the case was reassigned from the Honorable Richard Alan Enslen to this judge, and the County filed the instant motion to dismiss.  *See* Doc. Nos. 16-19.  With an extension of time, Gutierrez filed an opposition brief in February 2009, *see* Doc. Nos. 21-23, and the County did not file a reply brief within the time allotted by this district's Local Civil Rules.  By order dated May 1, 2009, the court ordered the County to file a reply brief, and it did so on May 26, 2009.

### DISCUSSION:  Count 1, FMLA Claims

Count one alleges that the County violated the FMLA, 29 U.S.C. § 2615, by interfering with or denying her exercise of her rights under the Act, refusing to allow her "access" to request FMLA leave, firing her because she asked for FMLA leave, and retaliating against her because she raised concerns of "illegal discrimination under or related to the Act."  Am Comp ¶¶ 31-32.

General FMLA Provisions.  The FMLA protects employees who have worked for the same employer[5] for at least one full year and who have provided at least 1250 hours of service within that period.  *Lafata v. Church of Christ Home for the Aged*, – F. App'x –, 2009 WL 1421104, *3 (6th Cir. May 20, 2009) (citing 29 U.S.C. § 2611(2)(A)).  Eligible employees are entitled to a total of twelve work-weeks of unpaid leave during any twelve-month period if they establish "a serious health condition that makes the employee unable to perform the functions of such position.'"  *Lafata*, – F. App'x at –, 2009 WL 1421104 at *3 (quoting 29 U.S.C. § 2612(a)(1)(D)).

Once an employer determines that an employee's leave qualifies as FMLA leave, the

---

[5]

The defendants do not deny that Gutierrez was an eligible employee as defined by 29 U.S.C. § 2611(2) or that at least one defendant was an employer as defined by 29 U.S.C. § 2611(4).

employer has the responsibility to designate the leave as FMLA-qualifying leave and to notify the employee of the designation. *Lafata*, – F. App'x at –, 2009 WL 1421104 at *3 (quoting 29 C.F.R. § 825.300(d)).

An eligible employee who takes FMLA leave "'shall be entitled, on return from such leave, to be restored by the employer to the position of employment held by the employee when the leave commenced,'" *Lafata*, – F. App'x at –, 2009 WL 1421104 at *3 (quoting 29 U.S.C. § 2614(a)(1)(A)), or "'to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment,'" *id.* (quoting 29 U.S.C. § 2614(a)(1)(B)).  To qualify as an equivalent position under the FMLA, "the employee's new position must be 'one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status.'" *Lafata*, – F. App'x at –, 2009 WL 1421104 at *3 (quoting 29 C.F.R. § 825.215(a)).  A claim that an employer terminated an employee in retaliation for taking FMLA leave is cognizable under both the interference and retaliation theories. *Allen v. City of Sturgis*, 559 F. Supp.2d 837, 844 (W.D. Mich. 2008) (citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 and n.2 (6th Cir. 2007)).

<u>No Genuine Issue as to Whether Gutierrez Gave Adequate Notice of Intent to Take
Leave for a "Serious Health Condition" or Showed that She Suffered from Such a Condition</u>

To invoke the protections of FMLA, the employee must provide notice and a qualifying reason for requesting the leave. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)).  If the need for the leave is foreseeable based on the serious health condition, the employee must provide at least 30 days advance notice before the FMLA leave is to begin. *See* 29 C.F.R. § 825.302(a).  If the need for the leave is *not* foreseeable, the employee need not provide 30 days notice, but must still provide notice

-10-

to the employer

> as soon as practicable under the facts and circumstances of the particular case.  It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave.

29 C.F.R. § 825.303(a) (citing 29 C.F.R. § 825.303(c) ("When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave.  For example, an employer may require employees to call a designated number or a specified individual to request leave.")).

Gutierrez's complaint does not specifically allege that her need for medical leave was unforeseeable, but her opposition brief argues that it was, *see* P's Opp at 10 (citing P's Opp Ex F). The defendants contend that her need for medical leave was foreseeable because "in the December 5, 2005, progress note from Lakeside Medical[,] Plaintiff told the Physician's Assistant the circumstances that led to her seeking time off from work were of '. . . longstanding, slowly brewing over a number of years."  MTD at 8-9.  On this record, however, the court need not determine whether Gutierrez's need for medical leave was foreseeable, because she has failed to satisfy the notice and certification requirements whether the need was foreseeable or unforeseeable.

Namely, even if they were timely, none of the vague, conclusory documents submitted by Gutierrez prior to her termination – most of which were not signed by a physician – gave the defendants reasonable notice that she was suffering from a serious health condition as defined by the regulations.  "It is the employee's responsibility to provide the employer with a complete and sufficient certification and to clarify the certification if necessary", 29 C.F.R. § 825.307(a), and a statement by the employee or even a licensed medical professional that she is "ill", "wasn't doing well", was "not feeling well" or was "unable to work", standing alone, are insufficient notice and

certification as a matter of law.  *See Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 424 (6th Cir. 2004); *see also Walton v. Ford Motor Co.*, 424 F.3d 481, 487 (6th Cir. 2005) ("'sick' does not imply a serious health condition") (citation to 7th Circuit omitted).

Gutierrez submitted five slips bearing the letterhead of Lakeview Medical Center, each one less than half the size of an 8.5-inch by 11-inch page and attaching no supporting documentation. The first slip is dated November 30, 2005 and bears a difficult-to-read signature which may be that of Patricia Jurcich, F.N.P., whose name is one of the ten names pre-printed on top of the slip.  This first slip states as follows (with handwritten words in italics and typewritten words in regular print): "*MaryAnne Gutierrez* has my permission to return to work/school on *12.5.05* with the following limitations -----------------.  This patient was under my care from *11.30.05* to *12.4.05* and was not able to perform his/her regular activities during this time."  MSJ Ex 2 at 1 (the word "work" in "work/school" is circled).

The second slip submitted by Gutierrez is dated December 5, 2005, and is a form identical to the first slip except for the dates filled in:  "*Maryanne Gutierrez* has my permission to return to work/school on *12/5/05* with the following limitations [blank underscore line with nothing filled in]. This patient was under my care from *12/5/05* to *12/6/05* and was not able to perform his/her regular activities during this time."  MSJ Ex 2 at 2 (the word "work" in "work/school" is circled).  This second slip appears to bear the signature of John Archambault, P.A.-C., whose name is one of the ten names pre-printed on the top of the form.

The third slip submitted by Gutierrez is dated December 7, 2005, again bears the signature of "John Archambault PAC", and is identical to the first two slips except for the dates filled in and the final sentence:  "*Maryanne Gutierrez* has my permission to return to work/school on *12/12/05*

-12-

with the following limitations [blank underscore line with nothing filled in].  This patient was under my care from *12/5/05* to *12/9/05* and was not able to perform his/her regular activities during this time.  *Must return to work on Monday Dec. 12 --"* MSJ Ex 2 at 1 (the word "work" in "work/school" is circled).

The fourth slip submitted by Gutierrez is dated December 9, 2005, bears an illegible signature which is allegedly that of a physician, and reads as follows: "For *Maryanne Gutierrez* Address [blank underscore line with nothing filled in]  *Please excuse Maryanne for missing work 12/12 - 12/16*."  MSJ Ex 2 at 1.

The fifth and final slip submitted by Gutierrez is dated December 17, 2005, again bears an illegible signature which is allegedly that of a physician, and both the handwriting and the copy quality are so poor that it is difficult to read.  It appears to read as follows:  For *Maryanne Gutierrez* Address [blank underscore line with nothing filled in]  *Please excuse Maryanne for missing work Dec. 17 - Jan. 2*", MSJ Ex 2 at 3, though the number after "Jan." is unclear.

Not one of the five slips provides any medical information whatsoever.  There is no indication of Gutierrez's subjective complaints or symptoms, no indication of any examination performed, no discussion of any treatment provided, no indication of any drugs prescribed, no indication of any tests performed or ordered, no diagnosis, no prognosis, i.e., no useful information at all regarding the nature and severity of her condition(s) and their likely consequences and duration.  The first three slips state generically that the patient was "under my care", which by itself says nothing to suggest that she suffered from any condition, let alone a *serious* health condition, and the fourth and fifth slips do not contain even that phrase.  Moreover, each of the first three slips stated that Gutierrez was able to return to work just a few days after they were issued, which by

-13-

itself does not suggest, and is arguably not even consistent with, a "serious health condition."

**The next inquiry is whether any of the five excuse slips were written or authorized by someone whom the regulations recognize as a "health care provider" for purposes of the FMLA.** Based on a comparison of the signatures on the first three slips with the names pre-printed on the top of those slips, the court agrees with the defendants' allegation that the first slip came from a Nurse Practitioner and the second and third slips from a Physician's Assistant (in this case, a so-called "P.A.-C"), and Gutierrez does not contest this point. This may be significant, because the FMLA defines a serious health condition as

> an illness, injury, impairment, or physical or mental condition that involves –
>
> (A)    inpatient care in a hospital, hospice, or residential medical care facility; or
> (B)    continuing treatment by a health care provider.

*Culpepper v. Blue Cross & Blue Shield of Tenn., Inc.*, – F. App'x –, –, 2009 WL 1051532, *3 (6th Cir. Apr. 20, 2009) (quoting 29 U.S.C. § 2611(11) and citing 29 C.F.R. §825.114(a)(2)). Gutierrez does not allege that she suffered from any condition that involved inpatient care in a hospital, hospice, or residential medical care facility, 29 U.S.C. § 2611(11)(A), so she must show that she suffered a condition that involved "continuing treatment by a health care provider."

In turn, the Act defines "health care provider" as

> (A)    a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or
>
> (B)    any other person determined by the Secretary to be capable of providing health care services.

29 U.S.C. § 2611(6) or identical definition at 29 C.F.R. § 825.125(a). Gutierrez does not allege that any of the first three slips were written by, let alone evince continuing treatment by "a doctor of medicine or osteopathy," 29 U.S.C. § 2611(6)(A).

-14-

Accordingly, Gutierrez has to show that those slips, either singly or in combination, evince "continuing treatment" by some "other person determined by the Secretary [of Labor] to be capable of providing health care services", *see* 29 U.S.C. § 2611(6)(B) and 2611(10) (defining "Secretary"). The Secretary has provided that

> Others "capable of providing health care services" include only:
>
> (1)    podiatrists, dentists, clinical psychologists, optometrists, and chiropractors (limited to treatment consisting of . . .) authorized to practice in the State and performing within the scope of their practice as defined under State law;
>
> (2)    *Nurse practitioners*, nurse-midwives, clinical social workers *and physician assistants who are authorized to practice under state law and who are performing within the scope of their practice as defined under State law*;
>
> (3)    Christian Science Practitioners . . . ;
>
> (4)    Any health care provider from whom an employer or the employer's group health plan benefits manager will accept certification of the existence of a serious health condition to substantiate a claim for benefits;
>
> (5)    A health care provider listed above who practices in a country other than the United States, who is . . . .

29 C.F.R. § 825.125(b) (emphasis added). Gutierrez does not allege that any of the first three slips were written by the types of professionals listed in 29 C.F.R. § 825.125(b)(1), (3), (4) and (5). Accordingly, to rely on a slip as evincing continuing treatment by a health care provider, she must show that that slip was written by a nurse practitioner or physician's assistant who was practicing within the scope of his or her practice as defined by Michigan law, *see* 29 C.F.R. § 825.125(b)(2).

As to the first slip, the defendants concede that its author, apparently Patricia Jurcich, F.N.P., could be considered a health care provider under this definition because "[a] Nurse Practitioner may practice with some degree of independence within the scope of practice permitted under Michigan law, *see* MCL 333.17210." MTD at 12. The defendants, however, cite an inapplicable statutory

-15-

section,[6] and the court will not scour the Michigan statute books or regulations to determine which

section they intended to cite.  As to the second and third slips, the defendants contend that

> John Archambault, the Physician's assistant who signed the December 5 and 6, 2005, excuse slips was not a health care provider as defined by the FMLA.  In Michigan, a Physician's Assistant's [sic] must practice "under the supervision of a physician licensed under Michigan law.  See, MCL 333.17001(g) [("'Practice as a physician's assistant' means the practice of medicine, osteopathic medicine and surgery, or podiatric medicine and surgery performed under the supervision of a physician licensed under this article.").]

> [Mich. Comp. Laws § 333.17001(h) adopts the definition of "supervision" found in MICH. COMP. LAWS § 333.16109, i.e., "the overseeing of or participation in the work of another individual by a health professional licensed under this article in circumstances where at least all of the following conditions exist:

> (a)    The continuous availability of direct communication in person or by radio, telephone, or telecommunication between the supervised individual and a licensed health professional.

> (b)    The availability of a licensed health professional on a regularly scheduled basis to review the practice of the supervised individual, to review records, and to further educate the supervised individual in the performance of the individual's functions.

> (c)    The provision by the licensed supervising health professional of predetermined procedures and drug protocol."]

> This is significant since 28 CFR 825.117(c) [wrong citation] requires that a health care provider must be authorized by applicable state law to "diagnose and treat physical or mental health conditions without supervision by a doctor or other health care provider."  As such John Archambault was not a "health care provider" as

---

[6]

The section cited by the defendants merely provides as follows,

The board of nursing may issue a specialty certification to a registered professional nurse who has advanced training beyond that required for initial licensure and who has demonstrated competency through examination or other evaluative process and who practices in 1 of the following health profession specialty fields: nurse midwifery, nurse anesthetist, or nurse practitioner.

MICH. COMP. LAWS § 333.17210.

defined by the FMLA or its administrative regulations.

MTD at 12. The defendants provide erroneous citations and an unclear, unpersuasive articulation of their argument that P.A. Archambault was not a healthcare provider within the meaning of 29 U.S.C. § 2611(6) and 29 C.F.R. § 825.125(a) and (b). **Rather than attempt to clear up the confusion generated by the defendants' unhelpful brief in this regard, the court will assume *arguendo* that P.A. Archambault was a healthcare provider under the FMLA (for purposes of this motion only).**

**Nonetheless, the fact remains that even if all five slips were written by "healthcare providers" as the term is defined, they contain nothing of substance, let alone enough information to "reasonably apprise" an employer that Gutierrez requesting time off because she was receiving "continuing treatment" for a "serious" health condition,** *Brohm*, 149 F.3d at 523, whether from those individuals or from anyone else.

For her part, Gutierrez's opposition brief does not cite a *single* decision from our Court of Appeals, or any district court in our circuit, whether published or unpublished, on the issue of adequate notice *or* the issue of proof and certification of a serious health condition. *See* P's Opp at 9-15 (notice issue) and 15-17 (serious health condition). Thus, she has presented no binding precedent, or even Sixth Circuit persuasive authority, showing that communications and documentation remotely similar to what she provided can suffice to give adequate FMLA notice to an employer or adequate verification of a serious health condition. Moreover, the only Circuit-level decision she cites, *Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629 (4th Cir. 2008) (p.c.) (Shedd, Hamilton, D.S.C. D.J. Terry Wootten), has never been cited by any Sixth Circuit court and is readily distinguishable on its facts. Unlike Gutierrez, the plaintiff there provided the employer

pre-termination with documentation showing that a physician examined her, diagnosed her with apparent cardiovascular and psychiatric problems, prescribed medications, and placed her on a heart monitor, and *then* recommended that she not return to work for several days. *See Krenzke*, 289 F. App'x at 634.

For these reasons, Gutierrez's five excuse slips, taken singly or together, were inadequate to put the defendants on notice that she was receiving continuing treatment from a healthcare provider for *any* condition, let alone for a serious health condition – even more so than documentation which our Circuit has rejected, as in *Novak v. Metrohealth Med. Ctr.*, 503 F.3d 572 (6th Cir. 2007) (U.S.D.J. Ann Aldrich, by designation) (affirming dismissal of FMLA claim).  In *Novak* the panel wrote,

> We agree that Novak's certification forms were insufficient to establish the existence of a serious health condition for purposes of FMLA.  Dr. Wloszek's first certification form did not contain the date on which the serious health condition began, the probable duration of the condition, or the appropriate medical facts within the health provider's knowledge; as a result, this certification was not sufficient under § 2613(b), and Metrohealth was not required to credit it.
>
> Dr. Wloszek's second certification form was completed by her assistant at the insistence of Novak and was not authorized by Dr. Wloszek; because its contents were not authorized by a physician, Metrohealth satisfied its burden in demonstrating that the certification was not authentic.
>
> Finally, Dr. Wloszek's third certification form acknowledged that Dr. Patil, not Dr. Wloszek, had treated Novak in March 2004.   Moreover, Dr. Wloszek informed Metrohealth that he had not examined Novak since October 2003, had no personal knowledge of Novak's current condition, and relied solely on what Novak relayed about Dr. Patil's assessment of her condition.   Because Metrohealth knew Dr. Wloszek lacked personal knowledge of Novak's current condition, Metrohealth satisfied its burden of showing that the certification was unreliable, and it acted reasonably in refusing to grant FMLA leave on that basis.

*Novak*, 503 F.3d at 578-79.  *See also Culpepper v. Bluecross Blueshield of Tennessee* (McKeague, Griffin, D.J. Weber) (affirming dismissal of FMLA claim) ("Culpepper calls our attention to a

Notice of Patient Release/Return forms sent by Dr. Donesky's office, indicating that she should be

released from work from February 20, 2006, until March 7, 2006, as evidence supporting her claim

that the disputed absences are covered by the FMLA.  However, *this notice is of questionable*

*reliability because it* is undated, *lacks detailed medical information*, and bears the signature of one

of Dr. Donesky's staff members, not the doctor himself.  *Because of these deficiencies, it does not*

*constitute an acceptable form of certification under the FMLA*.") (citation omitted, emphasis added);

*Verkade v. USPS*, 2009 WL 279048, *8 (W.D. Mich. Feb. 5, 2009) ("the medical certifications

accompanying plaintiff's series of FMLA requests were alternately premature, incomplete, and/or

failed to clearly establish the frequency, imminence and duration of his asserted 'chronic dizziness'

condition as required by 29 U.S.C. § 2613(b)).

        In the absence of such pre-termination documentation, Gutierrez presents no authority for

the notion that she provided adequate notice merely because on December 5, 2005 she expressed

to County Administrator Paul Inglis the medical problems she was experiencing, told him she would

need additional time off, requested paperwork, and "also spoke to the Court administrator" about

her alleged medical condition.  P's Opp at 11 (citing "Gutierrez, p67-69" and providing no quotation

or analysis).[7]  Nor does Gutierrez present authority, or logical support for the notion that her FMLA

_____

[7]

        The defendants also point to a note which Gutierrez gave her physician at their appointment
on Saturday, December 15, 2005 which stated, "I would not qualify under FMLA unless I claim to
have a serious health condition of my own, leaving me vulnerable to be denied my return to work
due to such condition."  *See* MTD at 6 (citing Ex 6).  Because other evidence makes clear that
Gutierrez did not establish a serious health condition as defined by the FMLA and accompanying
regulations, and did not give adequate notice to the defendants, the court does not consider
Gutierrez's comment about qualifying under the Act.

        Moreover, neither side has suggested that the defendants knew about Gutierrez's December
15, 2005 note to her physician when they terminated her employment on December 20, 2005 (rather
than grant or inquire further into the propriety of FMLA leave).

-19-

claim is rescued by the fact that her supervisor, Benton Gabbard, "wrote a letter to Plaintiff expressing his hope that she is 'feeling better' and acknowledging that Plaintiff would be off work for a 'substantial period of time . . . .'" P's Opp at 11 (citing P's Opp Ex D).  Gabbard's letter does not evince an understanding, belief, or acknowledgement that Gutierrez was suffering from a "*serious* health condition" as the regulations define the term, merely that she claimed to be suffering from *a* health condition and had stated that she would be out of work for a substantial period.  *See Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452, 456 (6th Cir. 2005) (Guy, Daughtrey, Gibbons) ("The relevant inquiry is 'whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request for time off for a *serious* health condition.'") (emphasis added, citation to Fifth Circuit decision omitted).

Gutierrez alleges that on December 5, 2005, fifteen days before her termination, she orally asked both County Administrator Inglis and Court Administrator Gabbard for FMLA paperwork. The defendants contend that this fact and subsequent events foreclose her FMLA claims.  They invoke title 29 C.F.R. § 825.313, entitled Failure to Provide Certification, provides, in pertinent part:

> *In the case of unforeseeable leave, an employer may deny FMLA coverage for the requested leave if the employee fails to provide a certification within 15 calendar days from receipt of the request for certification* unless not practicable due to extenuating circumstances.  For example, in the case of a medical emergency, it may not be practicable for an employee to provide the requested certification within 15 calendar days.
>
> Absent such extenuating circumstances, if the employee fails to timely return the certification, *the employer can deny FMLA protections for the leave following the expiration of the 15-day time period until a sufficient certification is provided*.  If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.313(b) (paragraph break and emphasis added).  The defendants' attempt to use this regulation, however, is less than clear.  To the extent that the court can discern the defendants'

-20-

argument, it fails.  The defendants assert, without citing authority, "In this case, her request for FMLA 'paperwork' on December 5, 2005, triggered the 15 day waiting period necessary before Plaintiff may be required to give medical certification."  MTD at 10.  But what the regulation says is that "[i]n the case of unforeseeable leave, an employer may deny FMLA coverage for the requested leave if the employee fails to provide a certification within 15 calendar days *from receipt of the request for certification*."  This language can only refer to *the employee's* receipt of *the employer's* request for certification.  Thus, for purposes of this regulation, it is immaterial when Gutierrez may have asked for FMLA paperwork.  On these facts, Title 29 C.F.R. § 825.313(b) cannot bear the weight which the defendants ask it to carry.

Nonetheless, notwithstanding the inapplicability of 29 C.F.R. § 825.313(b) on these facts, the defendants' other arguments are sufficient to merit dismissal of Gutierrez's FMLA claims for the reasons stated above.

**In short,** because Gutierrez did not give sufficient notice of her intent to take leave due to "continuing treatment" by a "healthcare provider" for a "serious health condition" that rendered her unable to perform her job, and did not demonstrate that she suffered from such a condition in the first place, her FMLA claims must be dismissed. This obviates the need to consider the defendants' alternative contentions that Oceana County must be dismissed because it was not Gutierrez's employer, *see* MTD at 7-8; P's Opp at 3-8, or their likely-waived argument that her damage claims must be dismissed due to Eleventh Amendment immunity, *see* Defs' Reply at 2-4.

**Finally, any medical evidence or certifications submitted to the defendants or this court after Gutierrez's termination are irrelevant** to whether the defendants violated her FMLA rights

-21-

by denying leave or terminating her employment, so the court will not consider them.  Specifically, the court cannot consider the affidavit of Dr. Julie A. Shellhouse, M.D., because it was not sworn until January 30, 2009, more than *three years* after it could and should have been submitted to the defendants (Gutierrez was terminated on December 20, 2005).  *See Nawrocki v. United Methodist Retirement Communities, Inc.*, 174 F. App'x 334, 337-38 (6th Cir. 2006) ("It is perhaps apparent from the December 12, 2001, letter that Plaintiff's condition left her incapacitated during the absence in question.  However, the fact that this information was not conveyed to the employer in the medical certification renders the Dr. Cole's [sic] letter post-termination a nullity.") (footnote omitted).

Although "[a] plaintiff's burden in establishing a *prima facie* case" under the FMLA "is not intended to be an onerous one", *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001), Gutierrez has not come close to carrying that burden.


**DISCUSSION:  Count 2, State-Law Claim**

That leaves only Gutierrez's state-law claim for wrongful discharge in violation of Michigan public policy.  *See* MTD at 15-17.[8]  The court has supplemental jurisdiction[9] over this claim, but our Circuit emphasizes that "'[s]upplemental jurisdiction is a doctrine of discretion . . . not of right.'"

---

[8]Gutierrez's opposition brief does not address the defendants' arguments regarding her state-law claim.

[9]

"The single term 'supplemental jurisdiction' now encompasses the two judicially created doctrines formerly referred to as 'pendent' and 'ancillary' jurisdiction.  28 U.S.C. § 1367, enacted [in] 1990 . . . , was intended to codify these case law doctrines."  *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 997 n.1 (E.D. Mich. Jan. 23, 1996).

*Hendrixson v. BASF Const. Chems. LLC*, – F. Supp.2d –, –, 2008 WL 3915156, *20 (W.D. Mich. Aug. 20, 2008) (Maloney, C.J.) (quoting *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003)); *see also Baer v. R&F Coal Co.*, 782 F.2d 600, 602 (6th Cir. 1986) (p.c.) (Krupansky, Guy, D.J. Suhrheinrich) (citing *UMWA v. Gibbs*, 383 U.S. 715, 726 (1966)); *Lake v. Granholm*, 2008 WL 724162, *14 (W.D. Mich. Mar. 17, 2008) (Jonker, J.) (quoting *Habich*).[10]

Having disposed of Gutierrez's lone federal claim, the court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines jurisdiction over the claim which arises under state law.  *See Allen v. City of Sturgis*, 559 F. Supp.2d 837, 852 (W.D. Mich. 2008) (Maloney, J.) ("'[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims.'") (citing, *inter alia*, *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing 28 U.S.C. § 1367(c)(3) and *UMWA*, 383 U.S. at 726 ("Certainly if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.")), *cert. denied*, – U.S. –, 127 S.Ct. 1832 (2007)); *see also Musson Theatrical, Inc. v. Fed Ex Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . .").[11]

"There does not appear to be any extraordinary circumstances to justify departing from th[e]

---

[10] *Accord Tholmer v. Yates*, 2009 WL 174162, *6 n.7 (E.D. Cal. Jan. 26, 2009) (citing *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997)).

[11]

To see just how strong our circuit's presumption against supplemental jurisdiction is, *see Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (only "*overwhelming* interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed") (emphasis added) and *Brown v. Nationwide Mut. Ins. Co.*, 2005 WL 1223888, *2 n.3 (N.D. Ohio May 23, 2005) (Dowd, J.) ("Although this court has discretion to exercise supplemental jurisdiction over state law claims which are based on the same facts as federal claims . . . , it is not required to do so *and rarely does*.") (emphasis added), *mot. for relief from judgment den.*, 2006 WL 1982943 (N.D. Ohio July 13, 2006).

general rule" disfavoring supplemental jurisdiction. *Pickelhaupt v. Jackson*, 2008 WL 4457823, *13 (E.D. Mich. July 22, 2008), *R&R adopted in part and rejected in part o.g.*, 2008 WL 4457807 (E.D. Mich. Sept. 30, 2008).  The interests of justice and comity are best served by deferring to Michigan's courts, which are best equipped to interpret and apply their own State's law governing wrongful discharge in the first instance.  *See Allen*, 559 F. Supp.2d at 852 (citing, *inter alia*, *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585 (6th Cir. 2005) ("[T]he district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law issues based on its consideration of *the interests of justice and comity best served by a state court's resolution of the remaining state law claims*.") (emphasis added)); *State Farm Auto. Ins. Co. v. Carter*, – F. Supp.2d –, –, 2008 WL 5740100, *18 (W.D. Mich. Oct. 28, 2008) ("When reasonably possible, it is far preferable for Michigan courts to interpret Michigan law . . . .  This is even more true [given that Michigan] judges . . . are elected by, and thus directly accountable to, the citizens . . . .").[12]

---

[12]

*See, e.g.,* exercising 28 U.S.C. § 1376(c)(3) discretion to decline supplemental over state-law claims and dismiss those claims without prejudice:

*Thornton v. Fed Ex Corp.*, 530 F.3d 451, 454 n.1 (6th Cir. 2008) (noting, "[t]he district court awarded summary judgment to Fed Ex on plaintiff's claims under federal law and then, declining to exercise continuing supplemental jurisdiction, dismissed the state law claims without prejudice.");

*Rayyan v. Sharpe*, 2008 WL 4601427, *8-9 (W.D. Mich. Oct. 15, 2008) (Maloney, C.J.);
*MEE Pension Fund v. EE&D*, 556 F. Supp.2d 746, 782 (W.D. Mich. 2008) (Maloney, J.);
*Moscardelli v. MLHCF*, 2008 WL 762237, n.7 (W.D. Mich. Mar. 19, 2008) (Maloney, J.);
*Marr v. Case*, 2008 WL 191326 (W.D. Mich. Jan. 18, 2008) (Maloney, J.);

*Westberg v. Russell*, 2008 WL 205208, *1 (W.D. Mich. Jan. 23, 2008) (Enslen, J.);
*Poindexter v. McKee*, 444 F. Supp.2d 783 (W.D. Mich. 2006) (Miles, J.);
*Reinhardt v. Dennis*, 399 F. Supp.2d 803, 811 (W.D. Mich. 2005) (McKeague, J.);
*Glover v. Elliott*, 2007 WL 4557853, *5 (W.D. Mich. Dec. 21, 2007) (Bell, C.J.);
*Forner v. Robinson Twp. Bd.*, 2007 WL 2284251, *8 (W.D. Mich. Aug. 7, 2007) (Quist, J.);
*Henderson v. Caruso*, 2007 WL 1876471 (W.D. Mich. June 28, 2007) (Greeley, M.J.);
*Herron v. Caruso*, 2005 WL 1862036, *6 (W.D. Mich. Aug. 2, 2005) (Edgar, J.);

-24-

**ORDER**

Defendants' motion to dismiss or for summary judgment [document #17] is **GRANTED in part** and **DENIED without prejudice in part**.

The FMLA claims (count one) are **DISMISSED**.

Pursuant to 28 U.S.C. § 1367(c), supplemental jurisdiction is **DECLINED** over count two.

State-law claims are **DISMISSED without prejudice**.[13]

This is a final and appealable order.[14]

**IT IS SO ORDERED** on this   29th   day of May 2009.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

*Faller v. Children's Hosp.*, 2009 WL 29878, *2 (S.D. Ohio Jan. 5, 2009) (Susan Dlott, C.J.).

[13]
When a federal district court declines supplemental jurisdiction over state-law claims,

the claims will be dismissed and must be refiled in state court.  To prevent the limitations period on those claims from expiring while they are pending in federal court, [28 U.S.C.] § 1367(d) requires state courts to toll the period while a supplemental claim is pending in federal court and for 30 days after its dismissal unless state law provides for a longer tolling period.

*Jinks v. Richland Cty., S.C.*, 538 U.S. 456, 456 (2003) (Scalia, J.) (syllabus).

[14]
The refusal to exercise supplemental jurisdiction is appealable, but it is reviewed only for clear error.  *Bell-Coker v. City of Lansing*, 2009 WL 166556, *8 (W.D. Mich. Jan. 21, 2009) (Maloney, C.J.) (citing *Reynosa v. Schultz*, 282 F. App'x 386, 390-91 (6th Cir. 2008) ("We . . . will not reverse unless the court below 'relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard . . . .'") (citing, *inter alia*, *US v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006))).