———————————————————————————
|
|
MARYANNE GUTIERREZ,                     |      Case No. 1:07-cv-1268
|
Plaintiff,                    |      HONORABLE PAUL MALONEY
|
v.                       |
|
78th JUDICIAL DISTRICT COURT and        |
OCEANA COUNTY,                          |
|
Defendants.                  |
|
———————————————————————————

**<u>OPINION AND ORDER</u>**
**Denying the Plaintiff's Motion for Reconsideration:**
FMLA Claims Remain Dismissed Pursuant to FRCP 12(b)(6);
State-Law Claims Remain Dismissed without Prejudice Pursuant to 28 U.S.C. § 1367(c)

Maryanne Gutierrez ("Gutierrez") brought this action under the Family and Medical Leave

Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), with a pendent Michigan common-law claim for wrongful

discharge in violation of public policy.  It is undisputed that defendant 78th Judicial District Court

was Gutierrez's employer, but the parties disagreed over whether defendant Oceana County,

Michigan also should be treated as Gutierrez's employer for purposes of the FMLA.

The defendants jointly filed a motion to dismiss in part and for summary judgment in part.

Under FED. R. CIV. P. 12(b)(6), they sought to dismiss the complaint as to Oceana County on the

ground that only the 78th District Court "and not Oceana County is the proper employer of [the

plaintiff], and the County took no action to interfere with Ms. Gutierrez'[s] right to obtain leave

under FMLA."  Defendants' Motion to Dismiss and for Summary Judgment ("MTD") at 1 ¶ 1; *see*

*also* MTD at 7-8 and Plaintiff's Brief in Opposition ("P's Opp") at 3-8.

Under FED. R. CIV. P. 56, defendants sought summary judgment on the FMLA claims on two grounds. First, they contended there is no genuine issue that Gutierrez did not provide her employer with adequate proof or reason to believe that she suffered from a "serious medical condition", *see* MTD at 13-15 and P's Opp at 15-17. Second, they contended there is no genuine issue that Gutierrez "failed to provide proper or sufficient notice that would have alerted her employer to the possibility that she was claiming or entitled to FMLA leave", *see* MTD at 8-13 and P's Opp at 9-15.

Gutierrez alleged that throughout her employment with the County, her immediate supervisor, Benton Gabbard ("Gabbard"), sexually harassed her. *See* First Amended Complaint filed Sept. 2008 ("Am Comp") ¶¶ 8-9. When Gutierrez tried to file numerous harassment claims with the County Administrator, non-party Paul Inglis, he "ignored" her complaints and told her to raise the issue with Gabbard. Gabbard allegedly berated Gutierrez about her complaints, directing her not to contact anyone at the court except him, and threatening to fire her through any means necessary. Due to the sexual harassment and Gabbard's subsequent threats, Gutierrez alleges, she "fell into a deep depression and anxiety requiring medical care." Am Comp ¶¶ 10-12.

Gutierrez claimed that "on several occasions" she tried to request FMLA leave from Gabbard and Inglis, and her doctor's staff also asked unspecified County employees for FMLA forms. In each case, she alleges, Gabbard or Inglis responded that the County had no procedures in place for FMLA requests but that a doctor's note listing the dates that she would be absent would suffice. Am Comp ¶¶ 13-14 & 16-17. On an unspecified date, Gutierrez provided the requested doctor's note, with a list of the dates she would miss work, but Inglis sent a letter asking her to "submit a FMLA leave request form with a medical certification 'no later than Monday, December 19, 2005 at 5:00

p.m.'"  Am Comp ¶¶ 15 & 18 & Ex 1.  County Administrator Inglis's letter to Gutierrez, dated

Wednesday, December 14, 2005, states as follows, in its entirety:

> Re:     Request for Leave under the Family and Medical Leave Act
>
> Dear Ms. Gutierrez:
>
> I have given a great deal of thought to your situation with respect to your leave of absence from your position as District Court clerk with the 78th District Court.  Your employer and I are somewhat confused and quite concerned over the rationale for your leave of absence from work since November 30, 2005.  To date, our office has received several statements from your physician's office which reflect the following in chronological order:
>
> 1.     Date: 11/30/2005 – return to work on 12/05/2005 as you were under a physician's [sic, not correct as this first slip was not signed by a physician] care from 11/30/05 - 12/04/05
>
> 2.     Date: 12/05/2005 – return to work on 12/07/2005 as you were under a physician's care [sic, not correct as this second slip was not signed by a physician] from 12/05/05 - 12/06/05
>
> 3.     Date:  12/07/2005 – must return to work on Monday, 12/12/2005 as you were under a physician's care from 12/05/05 - 12/09/05 [sic, not correct because this third slip was not signed by a physician]
>
> 4.     Date: 12/09/2005 – please excuse Maryanne for missing work 12/12/05 - 12/16/05
>
> The confusion has arisen over whether you have been on sick leave or whether you have taken leave under the Family and Medical Leave Act (FMLA).  Under both types of leave, specific requirements must be met.
>
> The following language is an excerpt from the County of Oceana's Personnel Policy as it relates to FMLA: Eligible employees may take leave for the following reasons: (1) to care for a child upon birth or upon placement for adoption or foster care; (2) to care for a parent, spouse or child with a serious health condition; or (3) when an employee is unable to work because of the employee's own serious health condition.
>
> According to FMLA, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves: (1) inpatient care (i.e., an overnight stay), including any period of incapacity or any subsequent treatment in

connection with the inpatient care; or (2) "continuing treatment" by a health care provider.

Past practice has not been for the County Administrator, County Board of Commissioners or the Department Head to grant leave under FMLA. Rather, our office only required that the physician documented that the employee was off work. This is really not adequate under FMLA or the County's Personnel Policy.

With respect to sick leave, page 8 of the County's Personnel policy states that "leave over three (3) days must be certified by a doctor's certificate if requested by the Department Head or Board of Commissioners".

I am concerned that you may be considered to be on an unapproved or unauthorized leave of absence by your Department Head and, unless you do one of the following, your actions to date may be construed as job abandonment or a voluntary quit.

*If the physician certifies that you should be on medical leave under FMLA, you will need to complete the enclosed "Employee Request for FMLA leave" and return it to this office no later than **Monday, December 19, 2005 at 5:00 p.m.***

If the physician determines that your medical condition precludes you from going to and doing your work in the 78th District Court, you will need to have him/her submit a Certificate of your need to be on sick leave and the certificate of sick leave must include the following information: patient diagnosis, patient prognosis, type and length of treatment to be provided and anticipated date of return to work. To date, the physician's certificates received by this office do not provide the necessary information. The physician's certificate is to be submitted to this office no later than **Monday, December 19, 2005 at 5:00 p.m.**

You should be aware that your present employer needs to know the status of your medical condition and the reason(s) for your inability to work as he needs to assess his staffing needs during your absence.

*Please comply with this request immediately in order to properly assess the status of your availability for work.*

If you have any questions, please feel free to contact me.

MTD, Ex 4 (boldface in original, italics added).

On Friday, December 16, Court Administrator / Magistrate Benton C. Gabbard sent a letter

to County Clerk Griffin stating, in its entirety:

Re:     Leave, Maryanne Gutierrez

Mrs. Gutierrez filed a three (3) day doctor[']s excusal for sick time covering the 1st, 2nd and 5th of December with the County Administrator['] Office.  In the absence of any contact from Mrs. Gutierrez, she is considered in **serious** non-compliance of [sic] County policy.  This office is unable to verify her job status.  Mrs. Gutierrez is considered to be on unexcused absence effective December 6th, 2005 and until clarification of Mrs. Gutierrez's status, she will not receive pay until further notice by this court.

Am Comp, Ex 2.  On Saturday, December 17, Gutierrez met with her doctor  "and *they determined that there was insufficient time to complete the required form and certification by December 19, 2005* as requested by Inglis."  Am Comp ¶ 21 (emphasis added).  Seeking to cast doubt on the veracity of this explanation for failing to submit a medical certification of any sort by the deadline stated, the defendants note that even the certification form belatedly provided by Gutierrez's physician after her termination contained only about twenty scribbled and sometimes barely-legible words and "N/A" symbols, which could not have taken much time at all.

On Tuesday, December 20, having received nothing from Gutierrez and nothing further from her doctor's office, Court Administrator / Magistrate Gabbard wrote her the following letter:

Re:     Employment Status

Ms. Gutierrez:

You have been absent from work since November 30, 2005 [21 days].  During this period of absence, this Court has not received any contact from you nor has it received any evidence of your inability to work due to a serious health condition.

In light of your failure to contact this office regarding your absences and your failure to provide certification of the need for Family Medical Leave under the provisions of FMLA, this Court has come to the conclusion that effective today you have abandoned your job and effectively voluntarily resigned your position with this Court.

If you have questions about final pay and continuation of benefits, please contact the Oceana County Administrator[']s Office, PO Box 31, Hart, Michigan, phone . . . .

MTD Ex 1.  On Thursday, December 22, Gutierrez submitted a note signed by her doctor which stated only, "Please excuse Maryanne for missing work December 17 - Jan 2."  The note contained no explanation.  Nor did the physician's conclusory one-line note attach or cross-reference any medical documentation stating a diagnosis, description of symptoms, or opinion on the nature and extent of the physical and mental limitations imposed by the condition.  The next day, Gutierrez received  Gabbard's letter stating that she had abandoned her job and was terminated.

Count one alleged that the County violated the FMLA, 29 U.S.C. § 2615, by interfering with or denying her exercise of Gutierrez's rights under the Act, refusing to allow her "access" to request FMLA leave, firing her because she asked for FMLA leave, and retaliating against her because she raised concerns of "illegal discrimination under or related to the Act."  Am Comp ¶¶ 31-32.

The FMLA protects employees who have worked for the same employer for at least one full year and worked at least 1250 hours of service in that period.  *Lafata v. Church of Christ Home for the Aged*, – F. App'x –, 2009 WL 1421104, *3 (6th Cir. 2009) (citing 29 U.S.C. § 2611(2)(A)).  Eligible employees are entitled to 12 work-weeks of unpaid leave during any twelve-month period if they establish "a serious health condition that makes the employee unable to perform the functions of such position.'"  *Lafata*, 2009 WL 1421104 at *3 (quoting 29 U.S.C. § 2612(a)(1)(D)).

Once an employer determines that an employee's leave qualifies as FMLA leave, it must designate the leave as FMLA-qualifying leave and notify the employee of the designation.  *Lafata*, 2009 WL 1421104 at *3 (quoting 29 C.F.R. § 825.300(d)).

An eligible employee who takes FMLA leave "'shall be entitled, on return from such leave, to be restored by the employer to the position of employment held by the employee when the leave commenced,'" *Lafata*, 2009 WL 1421104 at *3 (quoting 29 U.S.C. § 2614(a)(1)(A)), or "'to an

equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment,'" *id.* (quoting 29 U.S.C. § 2614(a)(1)(B)). To qualify as an equivalent position under the FMLA, "the employee's new position must be 'one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status.'" *Lafata*, 2009 WL 1421104 at *3 (quoting 29 C.F.R. § 825.215(a)). A claim that an employer terminated an employee in retaliation for taking FMLA leave is cognizable under both the interference and retaliation theories. *Allen v. City of Sturgis*, 559 F. Supp.2d 837, 844 (W.D. Mich. 2008) (citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 and n.2 (6th Cir. 2007)).

<u>No Genuine Issue as to Whether Gutierrez Gave Adequate Notice of Intent to Take Leave for a "Serious Health Condition" or Showed that She Suffered from Such a Condition</u>

To invoke the protections of FMLA, the employee must provide notice and a qualifying reason for requesting the leave. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)). If the need for the leave is foreseeable based on the serious health condition, the employee must provide at least 30 days advance notice before the FMLA leave is to begin. *See* 29 C.F.R. § 825.302(a). If the need for the leave is *not* foreseeable, the employee need not provide 30 days notice, but must still provide notice to the employer

> as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave.

29 C.F.R. § 825.303(a) (citing 29 C.F.R. § 825.303(c) ("When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural

requirements for requesting leave.  For example, an employer may require employees to call a designated number or a specified individual to request leave.")).

Gutierrez's complaint did not allege that her need for medical leave was unforeseeable, but her opposition brief argued that it was.  Defendants contended that her need for medical leave was foreseeable because "in the December 5, 2005, progress note from Lakeside Medical[,] Plaintiff told the Physician's Assistant the circumstances that led to her seeking time off from work were of '. . . longstanding, slowly brewing over a number of years."  But the court did not need to determine whether Gutierrez's need for medical leave was foreseeable, because she failed to satisfy the notice and certification requirements whether the need was foreseeable or unforeseeable.

Even if they were timely, none of the vague, conclusory documents submitted by Gutierrez prior to her termination – most of which were not even signed by a physician – gave the defendants reasonable notice that she was suffering from a serious health condition as defined by the regulations.  "It is the employee's responsibility to provide the employer with a complete and sufficient certification and to clarify the certification if necessary", 29 C.F.R. § 825.307(a), and a statement by the employee or even a licensed medical professional that she is "ill", "wasn't doing well", was "not feeling well" or was "unable to work", standing alone, are insufficient notice and certification as a matter of law.  *See Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 424 (6th Cir. 2004).  "'[S]ick' does not imply a serious health condition."  *Walton v. Ford Motor Co.*, 424 F.3d 481, 487 (6th Cir. 2005)) (citation to 7th Circuit omitted); *cf. Collins v. NTN-Bower Corp.* 272 F.3d 1006, 1008-09 (7th Cir. 2001) (Bauer, Easterbrook, Evans) ("[W]hen depression incapacitated her on a particular day, she could have made clear the serious nature of her condition . . . .  A reference to being 'sick' not only withheld important information from the employer but likely threw

it off the scent. Certainly it did not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable. [T]herefore, we conclude that Collins failed in her obligation to tell the employer enough to suggest that the FMLA may be pertinent.").

Gutierrez submitted five slips bearing the letterhead of Lakeview Medical Center, each one less than half the size of an 8.5- by 11-inch page and supported by no documentation. The first slip is dated November 30 and bears a difficult-to-read signature which may be Patricia Jurcich, F.N.P., whose name is one of the ten names pre-printed on top of the slip. This first slip stated as follows (with handwritten words in italics and typewritten words in regular print): "*MaryAnne Gutierrez* has my permission to return to work/school on *12.5.05* with the following limitations -----------------. This patient was under my care from *11.30.05* to *12.4.05* and was not able to perform his/her regular activities during this time." MSJ Ex 2 at 1 (the word "work" in "work/school" is circled).

The second slip submitted by Gutierrez was dated December 5, and was a form identical to the first slip except for the dates filled in: "*Maryanne Gutierrez* has my permission to return to work/school on *12/5/05* with the following limitations [blank underscore line with nothing filled in]. This patient was under my care from *12/5/05* to *12/6/05* and was not able to perform his/her regular activities during this time." MSJ Ex 2 at 2 (the word "work" in "work/school" is circled). This second slip appeared to bear the signature of John Archambault, P.A.-C., whose name is one of the ten names pre-printed on the top of the form.

The third slip submitted by Gutierrez was dated December 7, 2005, again bores the signature of "John Archambault PAC", and is identical to the first two slips except for the dates filled in and the final sentence: "*Maryanne Gutierrez* has my permission to return to work/school on *12/12/05* with the following limitations [blank underscore with nothing filled in]. This patient was under my

care from *12/5/05* to *12/9/05* and was not able to perform his/her regular activities during this time. *Must return to work on Monday Dec. 12 --"* MSJ Ex 2 at 1 ("work" in "work/school" is circled).

The fourth slip submitted by Gutierrez was dated December 9, bore an illegible signature allegedly of a physician, and read, "For *Maryanne Gutierrez* Address [underscore line with nothing filled in] *Please excuse Maryanne for missing work 12/12 - 12/16*." MSJ Ex 2 at 1.

The fifth and final slip submitted by Gutierrez is dated December 17, again bore an illegible signature which was allegedly that of a physician, and the handwriting and copy quality were so poor that it is difficult to read. It appears to read as follows: For *Maryanne Gutierrez* Address [underscore with nothing filled in] *Please excuse Maryanne for missing work Dec. 17 - Jan. 2*", MSJ Ex 2 at 3, though the number after "Jan." is unclear.

Not one of the five slips provided any medical information whatsoever. There was no indication of Gutierrez's subjective complaints or symptoms, and no indication of any examination performed. There was no discussion of any treatment provided, no indication of any drugs prescribed, no indication of any tests performed or ordered, no diagnosis, no prognosis. In all, there was no useful information at all regarding the nature and severity of her condition(s) and their likely consequences and duration. The first three slips stated generically that the patient was "under my care", which by itself says nothing to suggest that she suffered from any condition, let alone a *serious* health condition. The fourth and fifth slips did not contain even *that* phrase. Moreover, each of the first three slips stated that Gutierrez was able to return to work just a few days after they were issued, which by itself *certainly* did not tend to suggest a "serious health condition."

**The next inquiry is whether any of the five excuse slips were written or authorized by someone whom the regulations recognize as a "health care provider" for purposes of the**

-10-

**FMLA.**  Based on a comparison of the signatures on the first three slips with the names pre-printed on the top of those slips, the court agrees with defendants that the first slip came from a Nurse Practitioner and the second and third slips from a Physician's Assistant ("P.A.-C"), and Gutierrez did not contest this.  This is significant, because the FMLA defines a serious health condition as

> an illness, injury, impairment, or physical or mental condition that involves –
>
> (A)    inpatient care in a hospital, hospice, or residential medical care facility; or
> (B)    continuing treatment by a health care provider.

*Culpepper v. Blue Cross & Blue Shield of Tenn., Inc.*, 321 F. App'x 491, 495 (6th Cir. Apr. 2009) (McKeague, <u>Griffin</u>, S.D. Ohio D.J. Weber) (quoting 29 U.S.C. § 2611(11) and citing 29 C.F.R. §825.114(a)(2)).  Gutierrez did not allege that she gave the defendants any reason to believe that her condition involved inpatient care in a hospital, hospice, or residential medical care facility, 29 U.S.C. § 2611(11)(A); thus, she could not satisfy the first prong of the "serious health condition" definition.

Instead, Gutierrez had to show she gave the defendants reason to know or believe that she suffered a condition involving "continuing treatment by a health care provider", the second definition of "serious health condition."  In turn, the Act defines "health care provider" as

> (A)    a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or
>
> (B)    any other person determined by the Secretary to be capable of providing health care services.

29 U.S.C. § 2611(6) or 29 C.F.R. § 825.125(a).  *Gutierrez did not allege then, and still does not allege now, that any of the first three slips were written by, let alone evince continuing treatment by, "a doctor of medicine or osteopathy," 29 U.S.C. § 2611(6)(A).*

Accordingly, Gutierrez had to show that those slips, singly or together, evinced "continuing

treatment" by some "other person determined by the Secretary to be capable of providing health care services", *see* 29 U.S.C. § 2611(6)(B) and (10).  The Secretary has provided that

> Others "capable of providing health care services" include only:
>
> (1)    podiatrists, dentists, clinical psychologists, optometrists, and chiropractors (limited to treatment consisting of . . .) authorized to practice in the State and performing within the scope of their practice as defined under State law;
>
> (2)    *Nurse practitioners*, nurse-midwives, clinical social workers *and physician assistants who are authorized to practice under state law and who are performing within the scope of their practice as defined under State law*;
>
> (3)    Christian Science Practitioners . . . ;
>
> (4)    Any health care provider from whom an employer or the employer's group health plan benefits manager will accept certification of the existence of a serious health condition to substantiate a claim for benefits;
>
> (5)    A health care provider listed above who practices in a country other than the United States, who is . . . .

29 C.F.R. § 825.125(b) (emphasis added).

Gutierrez did not allege then, *and does not allege now,* that any of the first three slips were written by professionals listed in (b)(1), (3), (4) and (5).  Accordingly, to rely on a slip as evincing continuing treatment by a health care provider, she had show it was written by a nurse practitioner or P.A. within the scope of his practice as defined by state law, *see* 29 C.F.R. § 825.125(b)(2).

As to the first slip, the defendants concede that its author, apparently Patricia Jurcich, F.N.P., could be considered a health care provider under this definition because "[a] Nurse Practitioner may practice with some degree of independence within the scope of practice permitted under Michigan law, *see* MCL 333.17210."  MTD at 12.  The defendants, however, cited an inapplicable statutory

section,[1] and the court declined to scour the Michigan statute books or regulations to determine which section they intended to cite. As to the second and third slips, the defendants contended that

> John Archambault, the Physician's assistant who signed the December 5 and 6, 2005, excuse slips was not a health care provider as defined by the FMLA. In Michigan, a Physician's Assistant's [sic] must practice "under the supervision of a physician licensed under Michigan law. See, MCL 333.17001(g) [("'Practice as a physician's assistant' means the practice of medicine, osteopathic medicine and surgery, or podiatric medicine and surgery performed under the supervision of a physician licensed under this article.").]

> [MICH. COMP. LAWS § 333.17001(h) adopts the definition of "supervision" found in MICH. COMP. LAWS § 333.16109, i.e., "the overseeing of or participation in the work of another individual by a health professional licensed under this article in circumstances where at least all of the following conditions exist:

> (a)    The continuous availability of direct communication in person or by radio, telephone, or telecommunication between the supervised individual and a licensed health professional.

> (b)    The availability of a licensed health professional on a regularly scheduled basis to review the practice of the supervised individual, to review records, and to further educate the supervised individual in the performance of the individual's functions.

> (c)    The provision by the licensed supervising health professional of predetermined procedures and drug protocol."]

> This is significant since 28 CFR 825.117(c) [wrong citation] requires that a health care provider must be authorized by applicable state law to "diagnose and treat physical or mental health conditions without supervision by a doctor or other health care provider." As such John Archambault was not a "health care provider" as

---

[1]

The section cited by the defendants merely provides as follows,

The board of nursing may issue a specialty certification to a registered professional nurse who has advanced training beyond that required for initial licensure and who has demonstrated competency through examination or other evaluative process and who practices in 1 of the following health profession specialty fields: nurse midwifery, nurse anesthetist, or nurse practitioner.

MICH. COMP. LAWS § 333.17210.

defined by the FMLA or its administrative regulations.

MTD at 12.  The defendants provide erroneous citations and an unclear, unpersuasive articulation of their argument that P.A. Archambault was not a healthcare provider per 29 U.S.C. § 2611(6) and 29 C.F.R. § 825.125(a) and (b).  Rather than attempt to clear up the confusion they caused, the court assumed *arguendo* that P.A. Archambault was a healthcare provider under the FMLA.

**Nonetheless, the fact remained that even if all five slips were written by "healthcare providers" as the term is defined, they contained nothing of substance, let alone enough information to "reasonably apprise" an employer that Gutierrez requesting time off because she was receiving "continuing treatment" for a "serious" health condition,** *Brohm*, 149 F.3d at 523, whether from those individuals or from anyone else.  Gutierrez's reconsideration motion does not claim that any of the five excuse slips contained anything substantive whatsoever to apprise defendants that she was receiving *continuing treatment* from a physician, from P.A. Archambault, or from anyone else, specifically in connection with what was (or was believed by at least one medical professional to be) a *serious* health condition.

For her part, Gutierrez's opposition brief did not cite a *single* decision from our Court of Appeals, or any district court in our circuit on the issue of adequate notice *or* the related issue of proof of a *serious* health condition.  *See* P's Opp at 9-17.  Thus, she presented no precedent, or even Sixth Circuit persuasive authority, showing that communications and documentation roughly similar to what she provided can constitute adequate FMLA notice to an employer or adequate verification that the health condition which warrants leave is "serious."  Moreover, the only circuit decision she cited, *Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629 (4th Cir. 2008), had never been cited, and still has not been cited, by any other Sixth Circuit court.

Moreover, Gutierrez's reconsideration brief does nothing to disturb this court's conclusion that *Krenzke* was readily distinguishable on its facts. Unlike Gutierrez, Krenzke gave the employer pre-termination documentation showing that a physician examined her, diagnosed her with apparent cardiovascular and psychiatric problems, prescribed medications, placed her on a heart monitor, and *then* recommended that she not return to work for several days. *See Krenzke*, 289 F. App'x at 634.

Gutierrez's reconsideration does not point to any case law issued since the time of this court's decision, or any other case law, which changes the conclusion that her excuse slips did not put defendants on notice that she was receiving continuing treatment from a healthcare provider for *any* health condition, let alone a serious one – even more so than documentation which our Circuit has rejected in a similar context, as in *Novak v. Metrohealth Med. Ctr.*, 503 F.3d 572 (6th Cir. 2007) (D.J. Ann Aldrich, by designation) (affirming dismissal of FMLA claim). In *Novak* the panel wrote,

> We agree that Novak's certification forms were insufficient to establish the existence of a serious health condition for purposes of FMLA. Dr. Wloszek's first certification form did not contain the date on which the serious health condition began, the probable duration of the condition, or the appropriate medical facts within the health provider's knowledge; as a result, this certification was not sufficient under § 2613(b), and Metrohealth was not required to credit it.
>
> Dr. Wloszek's second certification form was completed by her assistant at the insistence of Novak and was not authorized by Dr. Wloszek; because its contents were not authorized by a physician, Metrohealth satisfied its burden in demonstrating that the certification was not authentic.
>
> Finally, Dr. Wloszek's third certification form acknowledged that Dr. Patil, not Dr. Wloszek, had treated Novak in March 2004. Moreover, Dr. Wloszek informed Metrohealth that he had not examined since October 2003, had no personal knowledge of Novak's current condition, and relied solely on what Novak relayed about Dr. Patil's assessment of her condition. Because Metrohealth knew Dr. Wloszek lacked personal knowledge of Novak's current condition, Metrohealth satisfied its burden of showing that the certification was unreliable, and it acted reasonably in refusing to grant FMLA leave on that basis.

*Novak*, 503 F.3d at 578-79. As Judge Griffin wrote in *Culpepper v. Blue Cross & Blue Shield of*

*Tenn., Inc.*, 321 F. App'x 491, 495 (6ᵗʰ Cir. Apr. 2009) regarding a related  FMLA analysis,

> Culpepper calls our attention to a Notice of Patient Release/Return forms ent by Dr. Donesky's office, indicating that she should be released from work from February 20, 2006, until March 7, 2006, as evidence supporting her claim that the disputed absences are covered by the FMLA.

> However, *this notice is of questionable reliability because it* is undated, *lacks detailed medical information*, and bears the signature of one of Dr. Donesky's staff members, not the doctor himself. *Because of these deficiencies, it does not constitute an acceptable form of certification under the FMLA.*

*Id.* at 496 (cite omitted, emphasis and ¶ break added); *Verkade v. USPS*, 2009 WL 279048, *8 (W.D. Mich. Feb. 5, 2009) ("the medical certifications accompanying plaintiff's series of FMLA requests were alternately premature, incomplete, and/or failed to clearly establish the frequency, imminence and duration of his asserted 'chronic dizziness' condition as required by 29 U.S.C. § 2613(b)).").[2]

In the absence of such pre-termination documentation, Gutierrez presents no authority for the notion that she provided adequate notice.  Absent any Sixth Circuit case law suggesting the contrary, the court continues to find that Gutierrez did not even arguably provide adequate notice that her health condition was "serious" as defined by the regulations merely because on December 5, she expressed to Inglis the medical problems she was experiencing, told him she would need more time off, requested paperwork, and "spoke to the Court administrator" about her alleged condition. P's Opp at 11 (citing "Gutierrez, p67-69" and providing no quotation or analysis).[3]

---

[2]

*Contrast McDougal v. Altec Indus.*, 553 F. Supp.2d 862, 870 n.6 (W.D. Ky. 2008) (Jennifer Coffman, J.) ("The defendant cites *Novak* . . . in support of its argument that failure to provide a duration rendered the Certification Form incomplete.  Unlike *Novak*, where the certification form had empty spaces in the 'medical facts' and 'duration' sections, the plaintiff provided a form that contained a probable duration.  Further, Wimp's testimony that the form was complete limits the defendant's ability to now argue to the contrary.").

[3]

The defendants also pointed to a note Gutierrez gave her physician at their appointment on

Nor did Gutierrez present authority, or logical support for the notion that her FMLA claim is rescued by Gabbard's letter "expressing his hope that she is 'feeling better' and acknowledging that Plaintiff would be off work for a 'substantial period of time . . . .'" Gutierrez's reconsideration motion does nothing to show that a reasonable factfinder could find that Gabbard's letter evinced an understanding or belief that Gutierrez was suffering from a "*serious* health condition" as the regulations define it. Gabbard's letter evinces only his recognition that Gutierrez claimed to be suffering from *a* health condition and that she said she would be out of work for a substantial time. As our Court of Appeals has emphasized, "[t]he relevant inquiry is 'whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request for time off" not for any health condition, but "for a *serious* health condition.'" *Beaver v. RGIS Inventory Specialists*, 144 F. App'x 452, 456 (6th Cir. 2005) (Guy, Daughtrey, <u>Gibbons</u>) (emphasis added, 5th Cir. cite omitted); *see, e.g., Lackey v. Johnson Cty., Tenn.*, 104 F. App'x 483, 489-90 (6th Cir. 2004) (<u>Kennedy</u>, Martin, Rogers) ("Plaintiff failed to present any evidence that would establish that he had a 'serious health condition' . . . . [H]e may have told Defendant Mahaney that he had diabetes. That does not establish that he has it. Or, alternatively, that it rises to the level of 'serious health condition.' * * * We know only that he sometimes visited a doctor. We, however, do not know why he did. * * * Not all medical problems are subject to the FMLA. It is plaintiff's burden to establish that his medical problems are severe enough to warrant the FMLA protection.").

---

Saturday, December 15, which stated, "I would not qualify under FMLA unless I claim to have a serious health condition of my own, leaving me vulnerable to be denied my return to work due to such condition." *See* MTD Ex 6. Because other evidence made clear that Gutierrez did not establish a serious health condition as defined by FMLA and its regulations, and did not give adequate notice to the defendants, the court did not consider Gutierrez's comment about qualifying under the Act. Moreover, Gutierrez still has not alleged the defendants knew about her December 15 note when they fired her on December 20 (rather than inquire further into the propriety of FMLA leave).

Gutierrez alleges that on December 5, 2005, fifteen days before her termination, she orally asked both County Administrator Inglis and Court Administrator Gabbard for FMLA paperwork. The defendants contend that this fact and subsequent events foreclose her FMLA claims. They invoke title 29 C.F.R. § 825.313, entitled Failure to Provide Certification, provides, in pertinent part:

> *In the case of unforeseeable leave, an employer may deny FMLA coverage for the requested leave if the employee fails to provide a certification within 15 calendar days from receipt of the request for certification* unless not practicable due to extenuating circumstances. For example, in the case of a medical emergency, it may not be practicable for an employee to provide the requested certification within 15 calendar days.
>
> Absent such extenuating circumstances, if the employee fails to timely return the certification, *the employer can deny FMLA protections for the leave following the expiration of the 15-day time period until a sufficient certification is provided.* If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.313(b) (paragraph break and emphasis added). The defendants' attempt to use this regulation, however, is less than clear. To the extent that the court can discern the defendants' argument, it fails. The defendants assert, without citing authority, "In this case, her request for FMLA 'paperwork' on December 5, 2005, triggered the 15 day waiting period necessary before Plaintiff may be required to give medical certification." MTD at 10. But what the regulation says is that "[i]n the case of unforeseeable leave, an employer may deny FMLA coverage for the requested leave if the employee fails to provide a certification within 15 calendar days *from receipt of the request for certification.*" This language can only refer to *the employee's* receipt of *the employer's* request for certification. Thus, for purposes of this regulation, it is immaterial when Gutierrez may have asked for FMLA paperwork. On these facts, Title 29 C.F.R. § 825.313(b) cannot bear the weight which the defendants ask it to carry.

Nonetheless, notwithstanding the inapplicability of this regulation on these facts, defendants'

other arguments were and remain sufficient to merit dismissal of Gutierrez's FMLA claims.

**In short,** because Gutierrez did not give sufficient notice of her intent to take leave due to "continuing treatment" by a "healthcare provider" for a "serious health condition" that rendered her unable to perform her job, and did not demonstrate that she suffered from such a condition in the first place, her FMLA claims must be dismissed. That obviated the need to consider the alternative contentions that the County must be dismissed because it was not Gutierrez's employer, or their likely-waived argument that damage claims are precluded by Eleventh Amendment immunity.

Although "[a] plaintiff's burden in establishing a *prima facie* case" under the FMLA "is not intended to be an onerous one", *Skrjanc*, 272 F.3d at 315, Gutierrez still has not carried her burden of showing a genuine issue as to whether she provided sufficient medical documentation at the initial-notice stage. *Accord Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007) (Ripple, J.) (although the initial-notice requirement does not require the employee to "write a brief demonstrating a legal entitlement" to FMLA leave and "the notice requirement is not overly formalized, the notice must succeed in alerting the employer to the seriousness of the health condition", and it was not enough for employee to say that he needed to miss work because his wife was pregnant); *cf., e.g., Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1384-85 (11th Cir. 2005) (although employee told employer that she needed FMLA leave to care for her adult daughter during labor because her son-in-law had a broken collarbone, that was not enough at the initial stage to make employer aware that absence was potentially due to an FMLA-qualifying reason; the employee did not volunteer information about her daughter's alleged pregnancy complications and that she was unable to care for herself because of a physical or mental disability).

**Finally, Gutierrez argues for reconsideration on the following bases, based largely on**

**her misconstruing the court's rationale in granting summary judgment:**

> [T]his is not simply a case where the employee just called in sick, but rather she provided a consecutive series of doctor's [sic, not accurate as to the first three of the five lips] notes stating that she was under the care of a physician and unable to perform her duties at work, she verbally provided detailed information to her employer on two different occasions about her mental breakdown and her inability to work, there was correspondence back and forth, all referencing her FMLA request, and lastly, the employer [Gabbard] admitted, but for the doctor's [sic, not accurate as to the first three of the five slips] notes being sent first to the County Administrator [Inglis], she would have been granted FMLA leave.

The Court overlooked these critical things:

1.  The employer has **admitted** that even her written doctor's notices *alone* were sufficient to apprise them of the need for family medical leave.  (Gabbard, p84).

2.  A "serious health condition" that triggers the right to FMLA leave includes two or more visits to a health provider in which the employee cannot work for three or more days.  29 CFR 825.11(a).  The five (5) consecutive doctor's [sic, not accurate] notes, covering a period well in excess of three days, that said Ms. Gutierrez is unable to work, *even if lacking in detail*, as a matter of law meet the definition of a "serious health condition."  There is no dispute that the employer received these notices, or that Ms. Gutierrez specifically requested FMLA leave.

3.  Ms. Gutierrez testified that she verbally filled in the details about her medical condition to the County Supervisor and an assistant to the judge (since the judge would not speak with her directly).  (Gutierrez, p67-69).  Verbal notification of medical conditions is acceptable.  29 CFR 825.303.  The employer, in any deposition, never claimed that these verbal notifications were lacking in detail to apprise them of her medical condition.

4.  The Court's opinion showed it had an expectation that detailed medical information would be forthcoming in the doctor's notes to the employer.  The Court is confusing the process under the FMLA.  The employee initially just needs to show that the absences were due to a "serious medical condition" which is nothing more than meeting the definition of being unable to work for three or more days, with at least two visits to the doctor.  The doctor's [sic, not accurate as to three of the five slips] notes, which the employer admits receiving, are sufficient to show this.  The employer is then perfectly entitled to request all the details it wants to satisfy itself that there is a serious medical condition that qualifies under the FMLA.  Therefore, the medical details that the Court believed should have been in the doctor's slip [sic, singular] are details that are elicited in the *certification* process.  29 CFR 825.306.

Further, the Court overlooked the fact that the certification process (which would have provided the details) was not completed before the termination occurred because the employer violated the FMLA regulations and only gave Ms. Gutierrez five days to return the certification, instead of the required fifteen days. 29 CFR 825.305.

5. The employer admitted that the FMLA procedures had never been followed, and that the only requirements were that "the physician documented that the employee was off work." Exhibit B, attached to [opposition] brief.

* * *

As a matter of law, with a series of five (5) consecutive doctors['] [inaccurate] notes, indicating Gutierrez is unable to work, spanning a period well in excess of 3 days, each generated from a visit to a health provider, she has a "serious health condition" as defined by the FMLA. Clearly, the employer was on notice that "an event described in the FMLA has occurred.["] *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 724 (6th Cir. 2003).

P's Recon. Mot. at 2-3 and 3-4.

First, Gabbard's testimony that if he had seen Gutierrez's excuse slips he would have granted her FMLA leave, is irrelevant. His answer was based on a hypothetical question, because in fact he did not see those slips before Gutierrez was fired. Moreover, whatever Gabbard claims would have happened in that circumstance is immaterial, because his speculation does not change the fact that Gutierrez did not provide enough information or documentation to reasonably apprise the defendants that she was seeking leave for an *FMLA-qualifying* condition. As a sister court recently explained when granting summary judgment to an employer on an FMLA claim,

Rodriguez relies heavily on [employer]'s purported knowledge of her medical treatment and diagnosis of a suspected peptic ulcer in the days prior to her September 20-29 absences, arguing that [employer] had a duty to follow up with Rodriguez to see if her absence qualified for FMLA leave. While the Department of Labor regulations state that "[t]he employee should inquire further of the employee if it is necessary to have more information about whether FMLA[-qualifying] leave is being sought by the employee, and obtain the necessary details of the leave to be taken," 29 C.F.R. § 825.302(c), and that the "employer will be expected to obtain any additional required information," 29 C.F.R. § 825.303(b), the Court does not read this obligation as a safe harbor for employees who tell their employers merely that they are sick without further explanation, followed by numerous days of consecutive

-21-

absences.

Indeed, the obligation of further inquiry is only triggered after the employee communicates, as soon as practicable, "at least verbal notice sufficient to make the employer aware that the employee needs *FMLA-qualifying* leave." *Id.* (emphasis added). Reading these sections together and in their entirety, therefore, the Court concludes that an employer's duty of further inquiry is not triggered unless the employer, under the circumstances, could "reasonably be expected to conclude [that the plaintiff's] absence might have qualified for treatment under the FMLA." *Gay v. Gilman Paper co.*, 125 F.3d 1432 (11th Cir. 1997); *see also Philips*, 450 F.3d at 312 (requiring . . . the employee to provide "a probable basis for FMLA leave" before triggering an employer's duty of inquiry.

To read [29 C.F.R.] section 825.302(c) as requiring more of the employer would render the modifier "FMLA-qualifying"a nullity.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp.2d 508, 519 (D. Md. 2008) (footnotes 11-13

omitted, paragraph breaks added). On their own, an employee's medically unsubstantiated

assertions about her alleged condition, symptoms, and limitations – and her subjective layperson's

opinion or belief that her health condition is serious and qualifies for FMLA leave – provide no basis

for an employer to conclude there is a reasonable possibility that the employee qualifies for FMLA

leave. Neither Gutierrez's summary-judgment opposition nor her reconsideration brief show that

she meaningfully supported and supplemented her subjective oral statement about how she felt

physically or psychologically, how long *she believed* she might need to miss work, and whether *she*

*felt* her condition qualified her for FMLA leave.

The court has never expected or required Gutierrez to provide the same medical

documentation required at the later, certification stage of the analysis. The court continues to

recognize the distinction between the two analyses, a distinction which was briefly explored in our

Circuit's recent *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 797 (6th Cir. 2009) (Ryan, Siler,

<u>Griffin</u>) (district court did not abuse discretion by refusing to instruct jury to consider whether

employee had provided "complete and truthful information about his condition that enabled [employer] to conclude that his November 1, 2004 absence was protected by the FMLA", because at the initial-notice stage, "[t]he FMLA requires only that the employee provide 'sufficient' or 'reasonably adequate' notice tot the employer."). The court has merely required Gutierrez to provide evidence that she timely provided the defendants with some combination of verbal statements and basic supporting medical documentation that meets even the more-limited level of detail and explanation which could have triggered their duty to inquire further and consider her request as a potentially meritorious request for FMLA-qualifying leave.

Finally, other arguments which are merely repetitions or refinements of arguments raised in Gutierrez's summary-judgment opposition brief – such as her reiteration, again without citation to pertinent Sixth Circuit precedent, of the notion that an employee is automatically deemed to have be seeking FMLA-qualifying leave whenever she shows that she visited a health-care provider at least twice and in conjunction with at least three days off work – are not properly presented in a reconsideration motion. The court notes only that the lone case which Gutierrez belatedly cites for this proposition, *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713 (6th Cir. 2003), does not support her position. While *Cavin* recognized that an employee need not expressly invoke the FMLA by name (which Gutierrez did, in any event), it reaffirms the very standard of initial notice – not certification – which Gutierrez failed to meet: "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for *a serious* health condition", which requires "enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Cavin*, 346 F.3d at 723 and 724 (Cavin, unlike Gutierrez, informed his employer of a drastic event

-23-

which precipitated his injuries and resultant alleged inability to work, namely a motorcycle accident which required his hospitalization).

**Moreover, the very regulation cited by Gutierrez, 29 C.F.R. § 825.114,** goes on to give examples of conditions which "[o]rdinarily, unless complications arise . . . do not meet the definition of a serious health condition and do not qualify for FMLA leave":  the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc."  29 C.F.R. § 825.114(c).  Absent competent medical opinion of record to the contrary, the court finds that such conditions can cause an employee to make at least two visits to a healthcare provider and to miss at least three days of work.  These conditions could cause provider visits and corresponding work absences of the number and duration experienced by Gutierrez, yet the regulation specifically defines these conditions as *not* creating FMLA leave entitlement.  As the defendants correctly observe, Gutierrez did not provide her employer with basic medical opinion or information which gave it reason to believe that her provider visits and missed work-days were indicative not of any of the enumerated non-serious health conditions but of a serious health condition (as required even at the initial stage of the FMLA analysis).

**The court also rejects Gutierrez's assertion that her oral statement to the employer was sufficient for it to conclude that it should inquire further to ascertain whether her condition qualified for FMLA leave.**  For one thing, the court did not overlook Gutierrez's oral statement on this score, nor was the court unaware of the legal significance which Gutierrez unpersuasively sought to attribute to that statement.  At page 19 of this court's opinion granting summary judgment to the defendants, the court noted that Gutierrez generally cited several pages of her deposition

testimony (67 through 69) but failed to quote it or flesh out how and why it provided sufficient inquiry/initial notice to the employer that her condition could well qualify for FMLA leave. In their brief opposing reconsideration, the defendants state without contradiction from Gutierrez that "[w]hile plaintiff cited pp. 67-69 of her deposition to support her claim of verbal notice [of a serious health condition], the most she says she told anyone was that she was 'under extreme anxiety, stress, near breakdown.'" Defs' Opp at 6 (quoting Gutierrez Dep at 67:18). Neither Gutierrez's brief opposing summary judgment nor her reconsideration brief identifies any Sixth Circuit decisions holding or suggesting that similar statements to an employer about similar feelings or difficulties were enough to reasonably apprise the employer that further inquiry is warranted to determine whether the health condition is serious. And the court finds no such authority.

In addition, defendants state, without contradiction from Gutierrez, that she "provided no evidence concerning when this [verbal] notice allegedly occurred." Defs' Opp at 6. This is fatal to Gutierrez's attempt to use her verbal statement about anxiety/stress/near-breakdown as the requisite information to put the employer on inquiry notice that her condition might qualify her for FMLA leave. Without identifying when she made a certain statement, Gutierrez cannot show that made the statement "within no more than one or two working days of learning the need for leave" (as is required even if the court assumes that her need for leave was non-foreseeable, *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004)).

**Finally, Gutierrez's argument that the defendants did not give her the required fifteen days to respond to their request for medical certification, lacks merit.** Because Gutierrez did not do enough to trigger the defendants' duty to inquire and request the more-detailed documentation needed for medical certification, they were not obligated to request such more-

detailed documentation at all. In other words, because of Gutierrez's failure to satisfy the initial-notice requirement, she never reached the certification stage, where the regulations would have required the defendants to afford her fifteen days to provide certification documents.

## **ORDER**

Plaintiff's motion for reconsideration [document # 28] is **DENIED**.

This is a final and appealable order.

**IT IS SO ORDERED** on this __18th__ day of August 2009.

/s/ Paul L. Maloney_____
Honorable  Paul L. Maloney
Chief United States District Judge